IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 4:04cv75 |
| TELESERVICES MARKETING CORPORATION AND GENERAL TELEMARKETING INTERNATIONAL INC., | § § § § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING GENERAL TELEMARKETING INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

On this day came on for consideration Defendant General Telemarketing International Inc.'s ("GTII") Motion for Summary Judgment [Doc. No. 43]. Having considered the motion, Plaintiff Equal Employment Opportunity Commission's ("EEOC") response, GTII's reply and the additional briefing filed by the parties upon the Court's request, the Court is of the opinion that the motion should be DENIED.

**Procedural History**

This case was transferred from the Northern District of Texas on March 3, 2004, and on July 28, 2004, the parties appeared before this Court for a pre-trial scheduling conference. The Court set certain deadlines at the scheduling conference including the deadline for amending pleadings of August 31, 2004. On September 30, 2004, EEOC sought leave to amend its complaint to add a defendant. In its Motion to Amend the Complaint, the EEOC specifically stated that it desired to add GTII as a defendant under a joint employer theory of liability.

Defendant TMC, through its counsel, filed a response to the EEOC's motion, in which it responded to the assertion of the joint employer theory of liability.  On March 1, 2005, the Court granted the EEOC's Motion to Amend, noting that while the time for amending pleadings without being granted leave of the Court had expired, the deadline for the joinder of additional parties had not expired.  Further, the Court stated that it would allow the EEOC an opportunity to present its best case to support the single employer and joint employer theories of liability.

On April 1, 2005, GTII, through the same counsel representing Defendant Teleservices Marketing Corporation ("TMC"), filed a motion entitled "Defendant General Telemarketing International, Inc.'s Motion for Summary Judgment."  The initial sentence of the pleading states that GTII filed this "Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 12 (c)."  Federal Rule of Civil Procedure 12(c) provides for the filing of a motion for judgment on the pleadings and specifically states that:

> [i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).  Additionally, GTII attached evidence to its motion.  Because of the ambiguity of the GTII's motion, and in accordance with the Federal Rules of Civil Procedure, the Court issued an Order on July 5, 2005, informing the parties that it would consider GTII's motion as a motion for summary judgment on or after July 18, 2005.  The Court's Order also provided that both parties could submit supplemental summary judgment evidence in support of or in opposition to the motion on or before that date.  *Neither* party submitted any supplemental summary judgment evidence or briefing in response to the Court's Order.

On December 16, 2005, the Court ordered the parties to provide additional briefing on the issue of whether the EEOC was required to plead the integrated employer theory of liability against GTII in it's Amended Complaint in order to be entitled to present evidence on that theory.  The parties submitted their additional briefing on January 3, 2006.

**Background**

The EEOC brought this action under Title VII of the Civil Rights Act of 1964 on behalf of Charging Party, Babiker A. Babiker ("Babiker").  The EEOC alleges that TMC and GTII violated Title VII of the Civil Rights Act of 1964, as amended, by terminating Babiker because of his national origin, which is Sudanese.

TMC is in the business of providing telemarketing services.  TMC initially hired Babiker in 2001 as an outbound customer service agent selling cellular phones and rate plans for Verizon.  Babiker was laid off approximately one year later, along with all TMC employees working on the campaign, when Verizon discontinued the campaign.  In July of 2002, TMC entered into a contract with a new customer, ATX Technologies ("ATX").  ATX provided global positioning systems ("GPS") for Mercedes-Benz automobiles.  At the time ATX and TMC entered into the contract, Babiker was employed with another employer.  TMC recruited Babiker, and as a result, Babiker left his employment to return to TMC.

The ATX campaign required twenty customer service agents, also referred to as telephone sales representatives or "TSRs."  The TSRs were responsible for making calls to Mercedes-Benz owners, who had purchased their cars in the preceding year in an attempt to renew their GPS service, which was provided free during the first year of ownership.  If the customer indicated to

the TSR that he wanted to renew the GPS service, the TSR was to obtain the customer's credit card information so that the renewal fee could be charged to the customer.

At some point after Babiker began working on the ATX campaign, TMC received a complaint from ATX about a call involving Babiker.  The client complained that Babiker spoke broken English and was abrupt in asking a Mercedes-Benz owner for his credit card information.  The complaint was forwarded to TMC and received by Ja Harbour via email.  The email address at which Harbour received this complaint was "jah@gtiops.com.", and the subject line of the email read "GTI Complaint."  Harbour's signature block read "Ja Harbour, GTI Acc't Mgr."

A recording was made of the telephone call in question, which was reviewed by Babiker's supervisor Harbour.  After listening to the call, Harbour initially found Babiker easy to understand.  Harbour did however testify that he believed Babiker spoke broken English.  Harbour testified that he knew that Babiker's accent played a role in the decision to remove Babiker from the ATX campaign and that ATX's issue with Babiker's accent is that he had one.  Babiker was removed from the ATX campaign.

On August 19, 2002, Babiker filed a Charge of Discrimination with the EEOC against Telemarketing Services Corporation stating that his supervisor, Shana Killerlain, told Babiker that he was being laid off because of a customer complaint about his broken English and that the president of the company, Michael Cole, told him that he was being pulled off the Mercedes-Benz campaign at the request of a customer.

The EEOC took the deposition of Shannon Lewis ("Lewis"), who was designated to appear on behalf of TMC.  Lewis testified that she was never employed by TMC, but that she did run payrolls for TMC, which included keeping personnel records, tracking time, filing quarterly

and annual tax reports and producing weekly salary paychecks. Lewis was employed by GTII when she performed these duties for TMC. She performed the same duties for GTII. Lewis initially began working for General Telemarketing Incorporated ("GTI") in April of 1993, but eventually all of the employees of GTI were transferred to GTII. Both GTII and TMC provided telemarketing services, but GTII only performed third-party verification services for inbound callers, while TMC provided both outbound calling and inbound caller services. Lewis's boss at GTII was Stacy Beavers ("Beavers"), whose position with the company was secretary/treasurer. Beavers functioned in the same role at TMC. Lewis further testified that the president of GTII was Michael Cole, the operations manager for GTII was John Buchholz, and the campaign managers for GTII were Harbour and Jerry Davis.   Lewis also testified that Harbour was not a campaign manager at TMC and was not employed by TMC in any way.

   Lewis testified that while TMC no longer has a headquarters, it formerly shared offices with GTII's corporate headquarters at 3923 Morse, Suite 101, Denton, Texas. TMC and GTII also shared the same facility at 1111 Avenue C in Denton. TMC and GTII used basically the same employment manual and shared the same phone system, meeting rooms, restrooms and benefit plans. Lewis also testified that Michael Cole was in charge of hiring and firing top management at both TMC and GTII. Lewis participated in making policy changes at both TMC and GTII. Finally, Lewis testified that when TMC got rid of its employees, they were offered new hire positions at GTII.

   General Telemarketing International, Inc. is registered with the Nevada Secretary of State. Michael Cole is listed as its president, and Stacy Beavers is listed as its secretary/treasurer. Teleservices Marketing Corporation is registered with the Texas Secretary of State. Its registered

agent for service is Stacy Beavers. Stacy Beavers is also listed as the secretary/treasurer and a director of TMC, and Michael Cole is listed as the president and a director of TMC.

**Sufficiency of the Pleading**

Defendant GTII argues that it never employed Babiker and that the EEOC's Amended Complaint does not allege that GTII was Babiker's employer. Federal Rule of Civil Procedure 8(a) states that an original claim for relief "shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." No heightened pleading standard exists in employment discrimination cases. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed.2d 1 (2002). A claimant's short and plain statement of the claim "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id*. (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id*. If a pleading lacks the specificity to put the defendant on notice of the allegations against it, it can move for a more definite statement under Federal Rule of Civil Procedure 12(e). *Id.*

The term "employer" under Title VII has been broadly interpreted and can include "'superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise.'" *Equal Employment Opportunity Commission v. Allied Aviation Serv's*, No. 3-05-CV-1379-L, 2005 WL 2778646 *2 n. 2 (N.D. Tex. Oct. 5, 2005) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1977)). "Such a determination involves a fact-intensive inquiry which precludes dismissal at the pleading stage." *Id*. Here, the EEOC amended its complaint to include GTII as a defendant, alleging its employment discrimination claims

against both GTII and TMC. GTII did not move for a more definite statement under 12(e). Moreover, GTII was fully aware of EEOC's theory of liability against it based on the extensive briefing on the issue of joint or integrated employer liability by both parties when the EEOC sought to amend its complaint. While GTII was not a party to this lawsuit during that briefing, it shares a president with TMC, and counsel for TMC is also counsel for GTII. Therefore, in accordance with the Court's Order of July 5, 2005, the Court will treat GTII's motion as a motion for summary judgment.

## Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986). The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted). Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a

genuine issue for trial." FED. R. CIV. P. 56(e).  Such nonmovant must also articulate the precise manner in which evidence he sets forth supports his claims. *See Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted).  Moreover, in designating specific facts, the nonmovant must "'go beyond the pleadings'" and use "'his own affidavits, . . . deposition[s], answers to interrogatories, and admissions on file.'" *Jones v. Sheehan & Young Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (citation omitted).[1]

If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53.  Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (citations omitted).

## Discussion

As previously stated, "the term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983) (citations omitted).  "[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise. . . ." *Id.*  The factors to be considered when determining whether two entities represent an integrated enterprise are: "(1) interrelation of

---

[1] The Court also notes that Local Rule CV-56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence. . . ."  Local Rule CV-56(c) further states that the Court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* The Court finds that questions of fact exist as to whether GTII and TMC satisfy the factors for establishing they operated as an integrated employer, precluding summary judgment.

The EEOC has presented summary judgment evidence that creates a question of fact as to whether an interrelation of operations existed between TMC and GTII. Lewis, who was employed by GTII but designated to testify on behalf of TMC, stated that she ran payrolls for TMC and GTII, which included keeping personnel records, tracking time, filing quarterly and annual tax reports and producing weekly salary paychecks. Lewis participated in making policy changes at both TMC and GTII. Lewis's boss at GTII was Stacy Beavers, who served as GTII's secretary/treasurer. Beavers held the same position at TMC. GTII and TMC shared the same facility, phone system, meeting rooms, restrooms, employment manual and benefit plan. Both GTII and TMC provided telemarketing services. GTII performed third-party verification services for inbound callers, while TMC provided both outbound calling and inbound caller services. Lewis testified that Harbour was employed with GTII and never employed with TMC, and Harbour's email address and title indicated that he was employed with GTII. However, the complaint about Babiker was sent to him, and he reviewed the phone call in question. This evidence creates a question of fact as to whether GTII and TMC had interrelated operations.

Questions of fact remain as to whether centralized control over labor relations existed between GTII and TMC. Lewis testified that GTII and TMC shared an employment manual and that she participated in policy changes for both entities. She also testified that Beavers and Cole held

the same position at both companies. Cole was also responsible for hiring and firing upper management at both companies.

The third and fourth factors for establishing an integrated enterprise are common management and common ownership. As previously discussed, Beavers served in the same capacity at both entities in a management position. Cole was responsible for the hiring and firing of upper-management at both TMC and GTII. Further, Lewis testified that Harbour was in a management position at GTII, and Harbour received complaints as to Babiker's performance while Babiker was an employee at TMC. Cole is the president of both GTII and TMC and is a director of TMC. Beavers is the secretary/treasurer for both GTII and TMC and serves as the registered agent and as a director for TMC. This evidence is sufficient to create questions of fact as to whether TMC and GTII shared common management and common ownership. Accordingly, GTII's motion for summary judgment should be denied.

GTII also argues that summary judgment should be granted because Babiker failed to exhaust his administrative remedies. The Court is not persuaded by this argument. GTII does not contend that Babiker wholly failed to file a timely charge of discrimination with the EEOC against TMC; rather, it contends that Babiker failed to file a charge of discrimination and attempt conciliation with GTII.[2] The crux of the EEOC's theory of liability against GTII is that it is a superficially distinct entity from TMC and that GTII and TMC essentially operated as a single integrated employer. As the Court has noted, questions of fact remain as to the EEOC's theory of liability against GTII. If the EEOC prevails on its theory, the fact that GTII was not named in the charge of discrimination does not contravene the rule that Title VII defendants must be

---

[2] The EEOC's attempts at conciliation with TMC failed.

named in the EEOC charge. *Wells v. Hutchison*, 499 F. Supp. 174, 189-90 (E.D. Tex. 1980) (finding that when two parties are the same entity for all relevant purposes, the fact that one party is not named in the EEOC charge does not contravene the rule that all defendants must be named in the charge). And in *Tillman v. Boaz*, 548 F.2d 592, 594 (5th Cir. 1977), the Fifth Circuit pointed out that "[c]harges filed with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings and who usually do not have the assistance of an attorney." Further, GTII has not been prejudiced by Babiker's lack of sophistication in making his charge of discrimination with the EEOC because Cole is the president of both TMC and GTII and both companies are represented by the same counsel. Accordingly, GTII's motion for summary judgment should be denied.

## Conclusion

For the foregoing reasons Defendant General Telemarketing International, Inc.'s Motion for Summary Judgment should be Denied.

It is so ORDERED.

**SIGNED this 8th day of February, 2006.**

_____
PAUL BROWN
SENIOR UNITED STATES DISTRICT JUDGE